# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| STEPHEN PARR, ) </br> ) </br> Plaintiff, ) </br> ) Cause No.: _____ </br> vs. ) </br> ) </br> UNION PACIFIC RAILROAD COMPANY, ) </br> ) **TRIAL BY JURY REQUESTED** </br> ) </br> Defendant. ) </br> ) </br> **Serve: CT Corporation System** ) </br> **120 South Central Avenue** ) </br> **Clayton, Missouri 63105** ) | |

## COMPLAINT

Plaintiff Stephen Parr, by and through counsel, Schlichter Bogard, LLP, states as follows for his complaint against Defendant Union Pacific Railroad Company:

### Parties, Jurisdiction, & Venue

1. Defendant is a corporation organized and existing under the law and is authorized to, and does, operate a business by railroad in several states, including Missouri, and is engaged in interstate transportation and commerce, including within this district.

2. Parr resides in Kansas, and Defendant employed him as a conductor, working in furtherance of its interstate transportation and commerce at all relevant times pertinent to this action.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 49 U.S.C. § 20109(d)(3), and 29 C.F.R. § 1982.114(a) because this action arises under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to this claim occurred in this district.

## **Employee Protections and Remedies under the FRSA**

5. Defendant is a railroad carrier engaged in interstate commerce within the meaning of 49 U.S.C. §§ 20102 and 20109(a) and (b) of the FRSA.

6. In relevant part, 49 U.S.C. § 20109(b)(1)(A) states that "[a] railroad carrier engaged in interstate . . . commerce . . . shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for . . . reporting, in good faith, a hazardous safety or security condition."

7. Pursuant to 49 U.S.C § 20109(e), an employee prevailing in any action under § 20109(d) "shall be entitled to all relief necessary to make the employee whole," including:

   (a) reinstatement with the same seniority status that the employee would have had, but for the discrimination;

   (b) any back pay, with interest; and

   (c) compensatory damages, including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

8. Also pursuant to 49 U.S.C. § 20109(e), relief in any action under 49 U.S.C. § 20109(d) "may include punitive damages in an amount not to exceed $250,000."

## **Facts**

9. Parr adopts and incorporates by reference paragraphs 1 through 8 above as though fully set forth herein.

10. Defendant hired Parr as a conductor on or about January 2015.

11. On March 6, 2023, Defendant sent Parr a letter informing that he was under investigation for "allegedly misus[ing] the Union Pacific Values Line and allegedly fail[ing] to

follow instructions from [his] management team" on February 27, 2023. Investigation Letter, **Ex. 1.**

12. On April 4, 2023, Defendant conducted the disciplinary hearing for the alleged misconduct that allegedly occurred on February 27, 2023.

13. At the disciplinary hearing, Defendant introduced evidence that Parr reported safety concerns to its Values Line between December 20, 2022, and February 11, 2023. Disciplinary Hr'g Exs. 5-11, **Ex. 2.**

14. Parr specifically expressed safety concerns about:

    (a) inadequate support from local management, management's failure to address safety issues, and retaliation for honestly and openly communicating with company investigators;

    (b) limits placed on his ability to communicate with company officials concerning safety issues;

    (c) Defendant's manager Nathan Zimmerman ordering crews to operate a train that did not comply with Federal Railroad Administration (FRA) standards for brake safety checks;

    (d) Defendant's manager Paul DiLoreto ordering a train crew to operate a train that did not meet the FRA's minimum air pressure requirements; and

    (e) Defendant deliberately misclassifying locomotives as "dead storage" status.

14. Parr made these reports to reduce the risk of injuries and community hazards.

15. Parr made these reports through "appropriate internal communication channels" as Defendant instructed him to do in a letter of counsel he received on December 20, 2022. Letter of Counsel, **Ex. 3**.

16. Even though Parr followed Defendant's instructions and these reports did not occur on February 27, 2023, Defendant used these reports of safety concerns as evidence to

3
Case 4:24-cv-00094-SRB    Document 1    Filed 02/08/24    Page 3 of 6

support its decision to fire Parr on April 14, 2023, for misconduct allegedly occurring on February 27, 2023.

17. Although Defendant claims to have fired Parr for misconduct allegedly occurring on February 27, 2023, it fired him because he made safety reports too frequently.

18. Parr's protected activity in reporting his safety concerns was a contributing factor in Defendant firing him.

19. On May 5, 2023, pursuant to § 20109(d)(1) of the FRSA and the implementing regulations set forth at 29 C.F.R. Part 1982, specifically 29 C.F.R. § 1982.103(a), Parr filed a whistleblower complaint with the Occupational Safety & Health Administration (OSHA), which is part of the Department of Labor.

20. The Secretary of Labor had not issued a final decision within 210 days after Parr filed his complaint.

21. The Secretary of Labor made preliminary findings on December 27, 2023.

22. Parr timely objected to those preliminary findings on January 17, 2024, and advised of his intent to file this lawsuit pursuant to 49 U.S.C. § 2019(d)(3).

## **FRSA Violation**

23. Parr adopts and incorporates by reference paragraphs 1 through 22 above as though fully set forth herein.

24. Parr engaged in protected activity under the FRSA by reporting safety concerns to Defendant in good faith.

25. Defendant has a motive to keep reports of safety violations to a minimum, as such reports can result in slower operations—and less profit—and the need for costly remedial actions.

4

26. Parr must report known safety violations, and Defendant faces penalties and fines for these violations. Thus, railroads, including Defendant, want to prevent and discourage its employees from reporting safety concerns, hazards, and violations. *See* Topher Sanders, et al., *"Do Your Job." How the Railroad Industry Intimidates Employees Into Putting Speed Before Safety*, ProPublica (Nov. 15, 2023), https://www.propublica.org/article/railroad-safety-union-pacific-csx-bnsf-trains-freight, **Ex. 3**.

27. Defendant's took adverse action against Parr, specifically, firing him, in response to and in retaliation for Parr engaging in protected activity, specifically, reporting safety concerns and to discourage similar reports in the future.

28. Because Parr's protected activity, i.e., reporting safety concerns, contributed at least in part to the adverse action Defendant took against him, i.e., firing him, Defendant violated 49 U.S.C. § 20109.

29. Defendant's actions are precisely the kind of actions which the FRSA was designed to prevent. Congress recognized the history of railroads retaliating against employees who report safety concerns and the importance of preventing such retaliation to promote railroad safety. *See Monohon v. BNSF Ry.*, 17 F.4th 773, 781 (8th Cir. 2021).

30. Defendant's conduct here engenders a culture of fear and apprehension among employees in reporting safety concerns to their employers and other authorities.

31. Defendant's conduct here will deter employees from reporting safety concerns because of the culture of fear and apprehension created by Defendant's actions against employees who do report safety concerns, such as Parr.

32. Because of Defendant's violation of 49 U.S.C. § 20109, Parr has suffered severe damages and economic losses, including interest on those losses; he has lost wages, benefits, and

earning capacity, and will continue to lose wages, benefits, and earning capacity in the future; he has suffered mental anguish and emotional distress and will continue to suffer mental anguish and emotional distress in the future; and he continues to incur special damages associated with litigation, including attorneys' fees and costs, all to his damage.

33. Defendant fired Parr with reckless, callous, and wanton disregard for the law, the safety of others, and Parr's rights under the FRSA, including his right to report safety concerns without fear of retaliation. warranting punitive damages pursuant to 49 U.S.C. §20109(e)(3).

34. Defendant should be punished for firing Parr, for creating and perpetuating fear among employees regarding reporting safety concerns, and to deter railroad management from continuing its practice of retaliating against and disciplining its employees for reporting safety concerns, all in direct and willful violation of 49 U.S.C. § 20109 and in reckless and callous disregard for Parr's right to report safety concerns without fear of retaliation.

WHEREFORE, Parr prays for a judgment against Defendant for all relief available pursuant to 49 U.S.C. § 20109, including compensatory damages, special damages, punitive damages, litigation costs and attorneys' fees, and all other relief necessary to make Plaintiff whole.

SCHLICHTER BOGARD LLP

/s/ Nelson G. Wolff
NELSON G. WOLFF #40796
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115
(314) 621-7151 (fax)
nwolff@uselaws.com

COUNSEL FOR PLAINTIFF